# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 13-176-05 |
| CYNTHIA E. BROWN | : | |

## MEMORANDUM

**Schiller, J.**                                                                                          **May 22, 2020**

Before the Court is the Defendant's Motion for Reconsideration/Renewed Motion for Compassionate Release. For the reasons that follow, the motion is granted.

**I.   BACKGROUND**

Cynthia Brown was convicted and sentenced in this Court on charges stemming from her participation in a scheme to secure numerous home loans based on false loan applications and appraisals. The scheme resulted in losses of more than seven million dollars. On February 19, 2015, this Court sentenced Brown to a 15-year term of imprisonment to be followed by five years of supervised release. At this time, Brown has served more than five years of that 15-year sentence.

In June of 2019, Brown was diagnosed with a form of blood cancer known as multiple myeloma. Thereafter, in July of 2019, Brown requested that the warden of FDC Philadelphia (where she was being held at the time) petition for her release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), based on extraordinary and compelling reasons, *i.e.*, terminal illness. The warden failed to timely respond to her request, and on August 8, 2019, Brown petitioned this Court for release. The Court heard argument on the motion and requested updated medical records related to Brown's prognosis. Ultimately, the Court denied Brown's motion on December 5, 2019,

reasoning that Brown's condition at the time did not outweigh the need for her sentence to reflect the gravity of her offense.

However, much has changed since the Court issued that Order. The country has been ravished by an unprecedented pandemic, commonly referred to as COVID-19. Brown's condition has not improved in the way her doctors had hoped it would at this stage, and the pressures of COVID-19 in the prison setting have recently impeded her progress and treatment. Specifically, after completing twelve rounds of chemotherapy, Brown has failed to achieve remission and staffing shortages in the facility have left Brown without necessary medication and caused her to miss medical appointments. (Mot. for Reconsideration at 4). Moreover, in addition to having cancer and recently completing chemotherapy, Brown suffers from neuropathy and asthma, which are comorbidities associated with an increased risk of serious infection or death from COVID-19. Thus, the Court now finds that extraordinary and compelling reasons justify Brown's immediate release from imprisonment.

## II.  DISCUSSION

Brown moves this Court to reconsider her motion to reduce her sentence to time served pursuant to 18 U.S.C. § 3582(C)(1)(A)(i).[1] Under 18 U.S.C. § 3582(C)(1)(A)(i), a judge may reduce an inmate's sentence if four conditions are met. First, the inmate must satisfy an administrative exhaustion requirement. Second, the Court must find that "extraordinary and compelling reasons warrant such a reduction." Third, any reduction granted by the Court must be

---

[1] "A proper motion for reconsideration under Fed. R. Civ. P. 59(e) must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Cave v. Saxon Mortg. Servs., Inc.*, Civ. A. Nos. 11-4586, 12-5366, 2017 WL 511629, at *1 (E.D. Pa. Feb. 8, 2017) (internal quotation marks and citation omitted). Here, Brown's motion is based on new evidence and, as such, the Court will reconsider her request in light of the facts as they stand today.

"consistent with any applicable policy statements issued by the Sentencing Commission". Finally, the proposed reduction must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a). All four conditions are present here.

### A. Exhaustion

To fulfill § 3582(C)(1)(A)'s exhaustion requirement, an inmate must first request that the BOP bring the motion for a reduced sentence on their behalf and, depending on the BOP's response, take one of three courses of action. If, within thirty days, the BOP agrees to bring the motion they may do so immediately. If, within thirty days, the BOP declines, the inmate must exhaust all administrative rights to appeal the BOP's decision. If the BOP does not act within thirty days, the inmate may bring the motion themselves. As mentioned above, Brown submitted her request to the BOP previously and the warden failed to timely respond. The Government's response to Brown's renewed motion does not raise an issue as to exhaustion. Thus, the Court is satisfied that Brown has sufficiently exhausted administrative remedies.

### B. Extraordinary and compelling reasons

Next, the Court finds that extraordinary and compelling reasons justify Brown's immediate release from incarceration. While Congress has not defined "extraordinary and compelling," the Sentencing Commission has issued a policy statement defining the term. Pursuant to that statement, extraordinary and compelling reasons for modification exist where, "[t]he defendant is suffering from a terminal illness . . . [or] suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" U.S.S.G. § 1B1.13 comment n.1(A)(ii).

It is clear that Brown suffers from a serious medical condition, from which she is not expected to recover, that substantially diminishes her ability to provide self-care in prison, particularly given the looming threat of COVID-19. Those incarcerated are at heightened risk contracting COVID-19. "COVID-19 is . . . more easily spread than some diseases because of its long incubation period and asymptomatic presentation in some people." *Valentine v. Collier*, Civ. A. No. 20-1115, 2020 WL 1916883, at *4 (S.D. Tex. Apr. 20, 2020). Moreover, COVID-19 poses particular risks to certain groups. "The populations at heightened risk include individuals . . . with underlying medical conditions, particularly if not well controlled. Medical conditions of concern include lung disease, asthma, serious heart conditions, severe obesity, diabetes, liver disease, ongoing kidney dialysis, and those causing individuals to be immunocompromised. In the highest risk populations, the case fatality rate is about 15%." *Pimentel-Estrada v. Barr*, Civ. A. No. 20-495, 2020 WL 2092430, at *3 (W.D. Wash. Apr. 28, 2020). "There currently are no cures, vaccines, or accepted treatments for COVID-19, and the only effective way to protect vulnerable people from injury or death from COVID-19 is to prevent individuals from being infected with the COVID-19 virus." *Id.*

Brown suffers from asthma and is immunocompromised as a result of the twelve rounds of chemotherapy she has undergone in the last eight months. These conditions put Brown at great risk of serious illness or death were she to contract COVID-19. It is undisputed that Brown is not expected to recover from these conditions. Moreover, the pressures of COVID-19 on the prison have interfered with Brown's cancer treatments and ability to receive care between treatments, putting her at greater risk of serious illness or death even without contracting the virus. (Mot. For Reconsideration at 2, 4). Thus, the Court finds that Brown's serious health problems, in light of

4

COVID-19, severely impede her ability to provide self-care in prison and constitute extraordinary and compelling reasons that justify her immediate release from incarceration.

*C. Consistency with Policy Statements*

Next, reducing Brown's sentence is consistent with applicable policy statements issued by the Sentencing Commission. "The guideline essentially repeats the statutory prerequisites and adds only a requirement that the defendant must not be 'a danger to the safety of any other person or to the community.'" *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019) (U.S.S.G. § 1B1.13(2)). While Brown's crime was a serious offense with terrible financial consequences, it was not a crime of violence. Additionally, the Court finds that given her age (58), poor health, and limited mobility Brown does not pose a danger to the safety of any other person or to the community. Moreover, the Court is confident that when presented with this writ of Rachmones, Brown will use the opportunity to spend time with family and friends (following proper social distancing protocols) and to contribute to the community, rather than harm it.

*D. Consistency with sentencing considerations*

Finally, the Court finds that Brown's release is consistent with the sentencing considerations set forth in Section 3553(a). The relevant factors to consider include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

(3) the kinds of sentences available;
. . . .

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

The Court finds that factors one and two weigh in favor of granting Brown's motion for compassionate release. Again, the Court recognizes that Brown is a repeat offender convicted of a serious crime. However, the characteristics of the defendant have changed significantly since the Court imposed her sentence. As Brown put it herself in a letter to the Court, "I have gone from a healthy, active, middle aged woman to a sick, middle age[d] woman that requires a walker to get around and I experience constant pain daily." (Mot. For Reconsideration at 21). Brown has served more than five years of her sentence, and she has spent almost a year of that time suffering from cancer while being held at a facility that is more than one thousand miles from her home and family. Moreover, Brown's poor health and other underlying conditions put her at great risk of serious illness or death if she were to contract COVID-19. The Court is sympathetic to the anxiety and emotional distress that inevitably flows from the threat of COVID-19 in prison, especially to a person who is immunocompromised and suffers from respiratory illness. Under such circumstances, the need for punitive measures can be accomplished in a shorter period of time. The Court finds that the time Brown has already served, in combination with the circumstances of her confinement and the modifications of the conditions of her supervised release (which will be discussed *infra*), sufficiently reflect the seriousness of her crime and provide adequate deterrence to future criminal conduct.

Factor three also weighs in favor of granting Brown's motion. The kinds of sentences available is an even more significant factor to consider in the midst of a global pandemic. Pursuant to 18 U.S.C. § 3583(e)(2) and (e)(4), the Court has the power to modify Brown's conditions of supervised release to "order the defendant to remain at [her] place of residence[.]" The Court has

6

determined that Brown's rehabilitation will be best served by reducing her sentence to time served and allowing her to return home to begin a period of supervised release. The Court will modify the conditions of Brown's supervised release as follows: upon her release from BOP custody, Brown will serve a six-month period of home confinement, after which her supervised release will terminate.

Finally, the Court finds that factor six also weighs in favor of granting Brown's motion for compassionate release. It is not lost on the Court the selective way in which the government, including the Bureau of Prisons, chooses to bestow compassionate release on certain high-profile defendants. Justice cannot be meted out only to the privileged. Under the circumstances described herein, the Court finds that granting Brown's motion does not create an unwarranted sentencing disparity between her and others convicted of serious financial crimes.

### III.  CONCLUSION

For the foregoing reasons, Cynthia Brown's Motion for Reconsideration/ Renewed Motion to Reduce Sentence for Extraordinary and Compelling Reasons under 18 U.S.C. § 3582(c)(1)(A)(i) is granted. An Order consistent with this Memorandum will be docketed separately.